LÓTTINGER, Judge.
This is a suit for damages resulting from an automobile accident wherein petitioner’s husband, James D. Hagen, met his death. The defendants are Houston Chenevert, Sr., father of the minor child, Houston Chenevert, Jr., who was driving one of the automobiles, individually and as administrator of the estate of his said minor son, and the State Farm Mutual Automobile Insurance Company, the liability insurer of Mr. Chenevert. The matter Was tried before a jury, and, the jury rendered judgment .fpr petitioner in the sum of $10,0.00. The defendants have appealed, and petitioner . has answered the appeal asking an increase in the amount of the judgment.
The facts show that,, on the evening of October 1, 1953, at about 7:00 o’clock P..M.,,the deceased was proceeding easterly on Bay Street ,in the City of..Baton Rouge. Upon reaching Scenic Avenue the deceased stopped, as there was a great deal of traffic going south on Scenic Avenue. Scenic Avenue is a heavily trafficked, four-lané street running north ánd south.' The intersection of S’cenic Avenue and Bay-Street is a “T” type of intersection, as Bay Street does not cross Scenic Avenue going easterly.
While the deceased was stopped for traffic, an- automobile which had been going south on Scenic Avenue stopped, and an occupant thereof waved to Mr. Hagen to proceed across Scenic Avenue. Mr. Hagen proceeded across the intersection, and was struck violently by the Chenevert automobile which was proceeding southward in the inside lane of traffic going south. Scenic Avenue has four traffic lanes, two going south, and two going north. The north and south lanes, are separated by an expansion joint..
The record conclusively shows that the Chenevert automobile was driven by Houston Chenevert, Jr., at the time of the accident. He was a young boy of 15 years .of age, at the time. Young Chenevert was going to a football game with five of his young friends at the time of, the tragedy. Although there is some conflict in ,'the testimony as to the speed of the Chenevert automobile at the time of the accident, the testimony is overwhelming to the effect that it was proceeding at a speed greatly ■ in excess of the 35 mile, per hour limit as set by the City of Baton Rouge. The great preponderance of the evidence shows that young Chenevert was going 60 or 70 miles per hour at the time of the impact.
*38 The point of impact was at the point where the left, or inside, lane of southbound traffic of Scenic Avenue intersects Bay Street. The right front portion of the Chenevert car struck the left forward portion of the Hagen automobile. Evidence is to the effect that, after the impact, the Hagen car spun around several times, and came to rest some 10 or IS feet south of the intersection and on the extreme western edge of Scenic Avenue. The deceased was thrown from his car, while it was spinning around, and suffered fatal and extremely painful injuries.
After the impact, the Chenevert automobile, came to rest some 290 feet south of the deceased’s car, and on the extreme western curb of Scenic Avenue. Witnesses testified that, after the impact, the Chene-vert car careened across the center line of Scenic Avenue, struck the extreme eastern curb of Scenic Avenue and then reversing its course, again completely crossed Scenic Avenue -until it came to its final resting point. One witness paced this distance as in excess of 350 feet. Several witnesses testified that the impact knocked the forward portion of the Chenevert automobile to such an extent that, while zig-zagging across Scenic Avenue, the front portion dragged the concrete causing sparks to fly “like a fireworks display.”
Mrs. Juanita Porier, a witness for petitioner, testified that prior to the accident, she was proceeding south in the inside or left lane of southerly traffic on Scenic Avenue. When she was one full block north of Bay Street, the Chenevert car passed her to'her right, then swerved to the inside lane to pass cars ahead which were proceeding in the outside lane. She estimated the speed of her car at the time to be about 25 miles per hour. Before she had traversed one-half of the block she heard the impact of the collision, and immediately stopped at about the middle of the block. From her testimony it appears that young Chenevert was going at least 50 miles per hour immediately before the impact.
Other witnesses testified as to the great speed of the Chenevert car. Michael Se-vario, who was a passenger in the Chene-vert car, testified that he was looking at the speedometer and that young Chenevert was going 70 at the time of the accident. The speed of the car was further brought out by the fact that it traveled a minimum distance of 290 feet, and probably much more, after the accident, while the front end was dragging the concrete causing bright sparks.
The evidence further shows that, at the time of the accident, Scenic Avenue was very heavily travelled because of its proximity to Memorial Stadium where a football game was to be played that night. Furthermore, Scenic Avenue is the main artery connecting the main part of Baton Rouge with the industrial section containing many large industries; and the Baton Rouge authorities had placed a speed limit of 35 miles per hour on this artery.
The evidence conclusively shows that young Chenevert was proceeding at an excessive rate of speed -at the time of the accident, and , there is no question but that he was negligent under the circumstances. The rate of speed was enhanced by the fact that he was a young and inexperienced driver. This was the second time that young Chenevert had been entrusted with his father’s car, and was the first time he had been allowed to use it at night.
The defense claims the contributory negligence of the deceased in, his attempting to cross Scenic Avenue in the face of the oncoming traffic. The evidence shows that traffic in the westernmost, or outside, lane had stopped to allow the deceased to pass. Considering the fact that young Chenevert had just passed Mrs. Porier on her right, or outside lane, and was proceeding in a very excessive speed, we do not believe that the deceased was negligent in failing to notice the approach of young Chenevert. We are of the firm opinion that the deceased had legally pre-empted the intersection and had every reason to believe that he could continue across without danger. When he entered the intersection we do not believe he could have seen the Chenevert car. At the time deceased en *39 tered the intersection, the Chenevert car must have been a good distance from the intersection, and probably behind the stopped cars, and certainly the deceased cannot be held negligent for failing to expect a car to be approaching him at such a great speed.
The defendants further contend that the deceased was guilty of contributory negligence in that he was, a't the time of the accident, attempting to make a left hand turn. Now, it is true that a left hand turn is a very dangerous maneuver under our jurisprudence, however, at the time of the accident the deceased was not making a left hand turn but was crossing an intersection. It may be true that he intended to execute a left turn after crossing the intersection, but the cases cited by the defense relative to left hand turns would not apply here. The cases cited have to do with left turns in relation to other traffic moving on the same street or highway, and not with intersecting traffic..
The sole and proximate cause of the traffic accident was the gross negligence of young Chenevert, a very young and inexperienced driver, in travelling at an excessive rate of speed on a heavily travelled avenue. We feel that he was going at least 60 miles per hour, according to the great weight of testimony, and under the circumstances of the heavy football traffic, feel that he was grossly negligent. Such must have been the feeling of the members of the jury, and we feel that their judgment in favor of petitioner was correct.
Although the great loss to the petitioner can never be replaced, we must now consider some amount of damages to repay petitioner for her tragic loss. The evidence shows that deceased was 72 years of age at the time of his death on October 2, 1953. He was the sole operator of a florist shop in Baton Rouge wherein he earned about $3,000 per year. He and Mrs. Hagen were described by witnesses as “a very devoted couple.”
As a result of the accident, Mr. Hagen suffered a broken right thigh bone, a compound fracture of his right ankle with obvious deformity of his right foot and ankle, several broken ribs and cuts and bruises all over his body. Dr. McMains testified that deceased was in “great pain” — that he was pretty much a bundle of broken bones. Deceased entered the hospital at about 7:00 P. M. on October 1st and died’ at about 11:30 A. M. the following day. The evidence shows that he was in great pain during this period. The autopsy shows that he died of “hemothorax” which is blood in the lung cavity.
The record shows that petitioner paid hospital, medical and funeral bills in the sum of $1,018. These, of course, are allowable and will be included in our judgment.
At the time of his death, Mr. Hagen was gainfully occupied as the sole owner and operator of a florist shop. In this he was assisted by his wife. His annual net income from said business was in the neighborhood of $3,000. At the time of his death he was 72 years of age and had a life expectancy of 10.31 years. He might have lived for a longer period, or for a shorter period. We have no way of knowing how long he would have been able to continue in his business, however, we feel that such a business was not of a strenuous nature and he may well have been able to continue in said business for four or five years or longer. Mr. Hagen was the only means of support of Mrs. Hagen, the petitioner, and, since his death, she has turned the business over to a niece.
As to pain and suffering, Dr. McMains testified that deceased suffered greatly, and it was necessary to administer dope in an attempt to somewhat relieve the pain. An operation was performed on deceased’s right foot which took a period of about 55 minutes, and operative procedure was performed on the thigh fracture. The doctor testified that, considering the multiple injuries and broken bones, the deceased suffered excessively. This suffering continued from the time of the accident, 7:00 P. M. until 11:30 the following morning.
*40 Considering all of the circumstances, as well as the age of the deceased, we believe that the amount awarded by the jury was inadequate, and the amount of the judgment will be raised to the sum of $11,018.
The liability .insurance , policy issued to Mr. Chenevert by the State Farm Mutual Automobile Insurance Company provides-a limit of $10,000 for each person and a limit of $20,000 for each accident. Therefore, under the circumstances, the liability of the said State Farm Mutual Automobile Insurance Company cannot exceed said amount of $10,000 plus interest and court costs. It is, therefore, ordered, adjudged and decreed that the entire and total, limit of liability of the said State Farm Mutual Automobile Insurance Company be limited herein to the amount of $10,000 plus interest and court costs.
For the reasons assigned, the judgment of the Lower Court will be amended to increase the award of damages to the sum of $11,018, and, as amended, the judgment below will be affirmed.
Judgment amended and as amended affirmed.